UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **JAMES BARBER,**<br>    **Plaintiff,**<br><br>v.<br><br>**MILBANK INSURANCE CO.,**<br>    **Defendant.** | **CIVIL ACTION NO. 5:21-213-KKC-EBA**<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on defendant Milbank Insurance Company's motion to exclude plaintiff James Barber's expert witness (DE 16) and motion for summary judgment (DE 19). For the following reasons, the motion to exclude will be GRANTED and the motion for summary judgment will be DENIED.

I.

The facts of this case are disputed but uncomplicated. On January 6, 2020, the insured property—a house Barber had purchased for use as a rental—was destroyed by a fire. (DE 1, #1 at 2). He subsequently made a claim under a fire policy held with Milbank Insurance Company. After investigating, Milbank concluded that Barber intentionally set the fire, decided no coverage existed under the policy, and refused to pay. (DE 19 at 2). Barber denies intentionally setting the fire. (DE 1, #1 at 3). He has sued Milbank for breach of contract.

At the time of the fire the house was unoccupied, and Barber was in and out of the house making repairs. (*Id.*). There is no dispute as to the cause of the fire—a salamander-style space heater pointed into a small bathroom closet. (*See* DE 20 at 1). The primary fact in dispute is how the heater got into position to cause the fire. Milbank says that Barber placed the heater in the

closet with the intent to set fire to the property. (DE 19 at 4). Barber says that he placed the heater in the bathroom pointed outward into an adjoining room and that the heater must have moved, independently, into the position causing the fire. (DE 20 at 1-2). Barber offers as an expert Robert Byers, who is prepared to testify that, in his experience, salamander heaters of this type can vibrate and "walk" on their own. (DE 26, #3). Byers is a licensed plumber and HVAC technician who has been engaged in this type of work for over sixty years. Byers has used salamander-style space heaters during the course of this work since 1960. (DE 26, #3 at 2).

## II.

After reviewing all the briefing and conducting an evidentiary hearing on the matter (DE 25), the Court will exclude the testimony of Robert Byers. For a proposed expert witness to survive a motion to exclude (1) the witness must be qualified by knowledge, skill, experience, training, or education; (2) the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony must be reliable. *United States v. Simpson*, 845 F. App'x 403, 409 (6th Cir. 2021) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

At the outset, the Court notes that Byers is qualified to talk about salamander heaters, at least generally. An expert witness must only meet "the minimal qualifications requirement," and needn't be required to "teach a graduate seminar on the subject." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (citing *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir.1981)). As someone who has worked with, repaired, and otherwise observed salamander heaters for over five decades, Byers is qualified based on his firsthand observations. The lack of "scientific" foundation underlying his opinions is not fatal. As the *Berry* court said of experience-based experts, "the beekeeper does not know any more about [scientific] flight principles than the jurors,

but he has seen a lot more bumblebees than they have." *Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994). Mr. Byers has simply seen more "bumblebees" than the jurors. He is qualified—at least to some extent—to give his opinion about salamander heaters.

But "the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry*, 25 F.3d at 1351. In other words, Byers may be qualified to talk about salamander heaters generally, but that is not enough. The question is whether Byers's qualifications (here, his experience with salamander heaters) provides a foundation for him to opine on the disputed fact of this case—how the salamander heater got into position to burn the house down. This distinction goes to the relevance and reliability of the expert testimony and is paramount to the analysis.

At its core, expert testimony is relevant when it helps the trier of fact determine a fact at issue in the case. "To determine whether an expert's testimony will be relevant, we look to whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute" *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (internal citations removed). The Court "must assess whether, without expert testimony, the average juror is unlikely to understand the material about which the expert proposes to testify." *Id.* (internal citations removed). Furthermore, "whether an opinion relates to an issue in the case or helps a jury answer a specific question depends on the claims before the court." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020).

Byers would testify that salamander heaters can vibrate in such a way as to cause them to move in a circular manner. He would also testify that, in his experience, salamander heaters are more likely to vibrate and "walk" on slick and sloped floors and are more likely to vibrate when

they are older and dirtier.[1] (DE 20 at 3). This testimony could, admittedly, make Barber's theory of the case more probable than not. The problem is that this testimony would not aid the jury in answering the specific question at issue here—how the heater got into the position that caused the fire. It runs the risk of misleading or confusing the jury. By his own admission, Byers has never seen a salamander heater move forwards or backwards. (*Id.*). In fact, there is significant confusion as to exactly what Byers has seen salamander heaters do over the years. Barber's theory as to the primary factual dispute in this case requires the heater to have independently moved numerous feet, made at least one significant turn, and then moved again in a relatively pronounced manner. (*See* diagram at DE 26, #4). Byers's proposed testimony simply cannot aid a jury in determining how the heater could have made that journey. There is no indication from his deposition that Byers could illuminate for the jury how this heater wound up pointing into this bathroom closet on this occasion. His interactions with salamander heaters over the last fifty years, though numerous, do not qualify him to give relevant testimony as to how the salamander heater moved in this case, upon the present facts. There is enough of a chasm between the facts, Barber's theory, and the expert's proposed testimony to exclude Byers on relevancy grounds.

For similar reasons, the Court must also exclude Byers on reliability grounds. The Court does not have to assess reliability based on the traditional *Daubert* factors of testing, methodology, and application of principles when the expert is an expert from experience and not an expert who conducted additional testing or research. *See In re Scrap Metal Antitrust Litigation*, 527 F.3d at 529. In fact, Federal Rule of Evidence 702 gives the district court "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999). Here, as is the case with many

---

[1] Furthermore, regarding these facts, the average juror can likely understand the general principles without the aid of an expert.

experience-based experts, the question of reliability boils down to whether there is sufficient factual basis to raise the proffered testimony above that of assumptions, guesses, and mere speculation. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000) ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known. The expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions." (internal quotations and citations removed)).

Again, there is a lack of factual basis here to raise the proposed testimony above speculation. Byers's proposed testimony has only a tenuous relationship to the facts at hand. Furthermore, and perhaps more importantly, neither the Court nor the parties can say with certainty what Byers's record testimony actually says or even what Byers would say at trial. Byers contradicts himself and offers otherwise confusing responses throughout his deposition. At one point, he states that he has never seen the heater that caused the fire move. (DE 16, #2 at 29-30). He then states that he saw a different red heater in Barber's garage (a nearly identical heater) move. (*Id.* at 31). A bit later, he says he did not actually see the red garage heater move. (*Id.* at 33-34). There is confusing testimony as to the last time Byers saw a salamander-type heater move in the manner he describes (it is unclear whether it has been 30 or 35 years ago, or more recently). (*See id.* at 34). At one point Byers says it has been five or six years since he saw the specific heater at issue in this case move on its own, and then immediately says he cannot give an example of that particular heater ever moving. (*Id.* at 35-36). In short, it is difficult for the Court to find Byers's testimony relevant or reliable when it is unclear what that testimony actually is or will be.

The Court is aware of, and certainly sensitive to, Mr. Byers's health issues. These issues at least contributed to his absence at the October 5 evidentiary hearing. Nevertheless, without some

clarification from Byers—the kind he could have provided at the hearing—the Court is left with only his deposition and related statements. These sometimes conflicting, oftentimes confusing statements create serious doubts about the reliability of his testimony. But even if Byers's statements are read in the most favorable light, resolving all conflicts in the manner most beneficial to Barber's theory of the case, they still do not establish enough factual foundation to raise the testimony above that of guesses and speculation. Because the proposed testimony lacks relevancy and reliability, the Court will exclude Robert Byers as an expert witness.

### III.

Defendant Milbank has also moved for summary judgment, arguing that if Robert Byers is excluded as an expert, then Barber "has no evidence to support his claim that he did not intentionally set the fire, on which his entire breach of contract claim rests." (DE 19 at 3). But this is inaccurate, at least as it relates to evidence at this stage of the litigation. Barber has submitted an affidavit disputing Milbank's accounting of the facts. He claims that he placed the heater in the bathroom away from the closet, pointing into the adjacent room, and that was the last time he saw it. (DE 21 at 13). He says that he did not intentionally set fire to his property. (*Id.* at 14). He states that he believes the heater must have vibrated and moved on its own. (*Id.*) His position is that he had no motive to burn down this house. (*Id.*). This is enough to create a genuine issue of material fact and stave off summary judgment—with or without the testimony of Robert Byers.

Summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986) "In application of this summary judgment standard, this Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party." *Mohney v. USA Hockey, Inc.*, 138 F. App'x 804, 813 (6th Cir. 2005). Determining witness credibility, weighing evidence, and drawing legitimate inferences are the province of the jury and cannot be conducted by a court at the summary judgment stage. *Scheffler v. Lee*, 752 F. App'x 239, 243 (6th Cir. 2018).

A plaintiff's affidavit can be enough to defeat a motion for summary judgment. *See Pierce v. Rowland*, No. 20-5731, 2021 WL 3929549, at *5 (6th Cir. Sept. 2, 2021) ("[N]o rule of procedure allows us to disregard [plaintiff's] side of things just because he is the plaintiff . . . the jury must decide which side is telling the truth."); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it."). Of course, there are various scenarios in which a plaintiff's affidavit, standing alone, is insufficient to defeat a motion for summary judgment. "[A] plaintiff cannot create a fact dispute by submitting an affidavit chock full of conclusory allegations. A court also may consider an affidavit incredible if it is riddled with internal contradictions. And under the sham affidavit doctrine, a court may strike an affidavit that contradicts the affiant's prior sworn testimony. Finally, even if a plaintiff's affidavit is valid, it cannot preclude summary judgment if it stands as a mere scintilla of evidence against a mountain of proof offered by the moving party." *Pierce*, 2021 WL 3929549, at *4 (internal citations removed).

Barber's affidavit does not contradict anything he previously stated. It has been his contention since the beginning that he did not intentionally start the fire. It is not full of conclusory allegations, only clear statements of his version of the events. It is not a mere scintilla of evidence standing against a mountain of proof. Milbank will offer its own expert witness, whom the jury

can believe or not. It is simply not the province of the Court to weigh the evidence, determine credibility, and make inferences at this point. When opposing parties tell two different stories at the summary judgment stage, the Court should not discount the plaintiff's version unless it is blatantly contradicted by the record. *See Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011). A factual dispute as to whether a fire was intentionally set may not be material to a bad faith claim, but it does go to the issue present here—whether the loss is covered in an action for breach of contract. *See Brown v. Allstate Indem. Co.*, No. CV 08-209-KSF, 2009 WL 10675147, at *2 (E.D. Ky. Apr. 7, 2009). At this point, Barber's affidavit is enough to create a genuine issue of material fact. *See Latham v. Allstate Ins. Co.*, 331 F. App'x 368, 370 (6th Cir. 2009) (in a factually similar he said/he said case involving alleged arson and insurance denials, suggesting that an affidavit from the plaintiff contesting the insurer's conclusion that plaintiff intentionally set the fire could have been enough to defeat summary judgment).

Here, we have two stories. Neither side presents a mountain of evidence supporting its version of the events—at least not enough to squash the dispute over *the* material fact of the case. A jury should decide which story to believe.

### IV.

Accordingly, the Court hereby ORDERS that (1) defendant Milbank's motion to exclude Robert Byers as an expert is GRANTED; and (2) Milbank's motion for summary judgment is DENIED.

Dated October 19, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY